BIBB MANUFACTURING COMPANY, PETITIONER, *v.* THE SECRETARY OF WAR, RESPONDENT.

Docket No. 87–R.  Promulgated April 29, 1949.

*Richard B. Barker, Esq.*, and *C. Baxter Jones, Esq.*, for the petitioner.

*William T. Becker, Esq.*, and *Paul L. Muilenburg, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: This is the first case in which a Commissioner of this Court conducted the hearing and made findings of fact. That procedure was adopted upon motion of the petitioner, to which the respondent said he had no objection. His findings were served upon the parties and they were given an opportunity to object. The petitioner had no substantial objections to the findings, but counsel for the respondent filed a number of objections, all of which have been carefully considered. The findings set forth above, except for the ultimate finding of the amount of excessive profits and a few minor changes and additions, are the findings of Commissioner Davis. He did not decide and did not intend to decide any of the issues hereinafter discussed, including the ultimate question of the amount of excessive profits. His findings included one of the amount of excessive profits, assuming certain amounts to represent renegotiable sales and net profits from those sales. That finding represented his judgment or conclusion based upon the evidence. But it did not, of course, represent the judgment or conclusion of the Court. The question of the amount of excessive profits, the ultimate question in this proceeding, the Court can not avoid, but must decide itself. It has made a finding deciding that question, which is one on which opinions can differ widely, as this proceeding clearly demonstrates.

The pleadings raise a question of the constitutionality of the Renegotiation Act, but that issue has not been argued and might properly be regarded as abandoned. However, the point is decided against the petitioner upon authority of *Stein Brothers Mfg. Co.*, 7 T. C. 863, and *Lichter* v. *United States*, 334 U. S. 742.

The Secretary determined that the net amount of renegotiable sales of this petitioner for the period ended August 31, 1942, was $12,547,814. He eliminated an estimated $1,400,040 to represent sales of seconds and shorts in arriving at the above amount. The petitioner contends that this Court must start with the figure of $12,547,814 to represent the renegotiable sales, since it does not have jurisdiction to consider any larger amount than that determined by the Secretary. Section 403 (e) (2) gives any subcontractor aggrieved by a determination of the Secretary as to the existence of excessive profits for any period ended before July 1, 1943, the right to file a petition with the Tax Court. The filing of that petition gives the Court jurisdiction to determine in a *de novo* proceeding the correct amount of excessive profits for the period involved. One of the things to be proved in a proceeding before the Tax Court is the amount of profits of the fiscal year which is

subject to renegotiation. The Court may even determine a greater amount of excessive profits than that determined by the Secretary if put in issue. There is nothing in the law supporting the petitioner's contention that the Tax Court must start with the same figure to represent renegotiable sales for the period under renegotiation as that determined by the Secretary.

The petitioner contends that $1,597,413 should be eliminated from renegotiable sales because deliveries and payments on sales in that amount were made prior to April 28, 1942. Section 403 (c) (6) of the Renegotiation Act provides that subsection (c) shall apply to all contracts and subcontracts theretofore made unless "final payment pursuant to such contract or subcontract was made prior to April 28, 1942." The petitioner entered into the contracts prior to April 28, 1942, and continued to make deliveries and receive payments under those contracts after April 28, 1942. The $1,597,413 represents goods shipped under those contracts and paid for prior to April 28, 1942, but the payments were in no case the final payments on the contracts and in every case additional shipments and additional payments occurred after April 28, 1942. The petitioner argues that those contracts were divisible, so that the goods shipped and paid for prior to April 28, 1942, were sales completed prior to that date and were not subject to renegotiation. The statute mentions contracts on which final payment had been made, not merely shipments under such contracts. The findings clearly show that final payment pursuant to the contracts or subcontracts involved herein was in no case made prior to April 28, 1942. Renegotiation was intended to apply to the entire contracts in such cases. *Stein Brothers Mfg. Co., supra.*

The petitioner did not make any sales directly to the Government. It sold yarn and cloth to others. Those others further processed the material, for example, by dyeing, weaving, or manufacturing in some way, and ultimately some of the yarn and cloth sold by the petitioner was sold to the Government. The Government rejected some of the material offered to it which had originally come from the petitioner. The rejections were for various reasons, including unsatisfactory variations in the colors and shrinkage. Material rejected by the Government was then sold for civilian use and did not involve the use of any appropriated Government funds. Such sales of seconds and shorts in the amount of $976,665.12 [2] were included in the stipulated figure of $13,889,604.66. This Court held in the case of *W. Tip*

---

[2] See findings 24 and 25. $677, 089. 56
303, 960. 71

981, 050. 27
4, 385. 15

976, 665. 12

*Davis Co.*, 12 T. C. 335, that only sales of material paid for out of appropriated Government funds are subject to renegotiation. The Secretary, in determining the excessive profits in this case, took the same position and held that sales of seconds and shorts were not subject to renegotiation. Now the opposite is urged. It is held that the sales of seconds and shorts in the amount above stated are not subject to renegotiation.

The petitioner contends that waste in the amount of $124,240.99 should likewise be eliminated in determining the net amount of renegotiable sales. The record is not clear as to what, if anything, was done with the waste. However, finding of fact 26 shows that waste in this amount was charged into the cost of goods sold to the Government. Thus, the material represents sales for which the petitioner received full payment and for which the Government was charged. There is no occasion under such circumstances to eliminate the amount of the waste from the renegotiable sales of the petitioner. The same is true of a small amount of seconds and shorts for which the Government was charged. See finding of fact 24 and footnote 2.

The next contention of the petitioner is that income taxes paid to the State of Georgia in the total amount of $605,369.34 are deductible in determining the profits on the petitioner's renegotiable sales. This Court held in *Albert & J. M. Anderson Mfg. Co.*, 12 T. C. 132, that similar taxes were deductible for 1942, as contended by the petitioner.

The ultimate question is the amount of excessive profits. The Secretary of War, after considering the evidence submitted in the renegotiation, determined that $1,400,000 of total profits of $2,488,400 on $12,547,814 of sales were excessive. The petitioner concedes that $550,000 of those profits were excessive. The Commissioner concluded that $750,000 would be the amount of excessive profits, assuming total profits of $2,908,483.29 on sales of $13,889,604.66. It is incumbent upon this Court to make its own determination of excessive profits. It has done so after carefully considering all of the evidence and arguments. The prior history and record of the petitioner, the plant, equipment, capital, and trained employees used by it, the relationship between renegotiable and nonrenegotiable business, its use of fully depreciated machinery, its efficiency, the savings which it effected, the changes and adjustments which it had to make, the valuable contributions made by it to the war effort, the prices charged and the quality and quantity of its goods, its position in the industry, these and all other "factors" have been considered and given such weight as seemed appropriate under the circumstances in arriving at the determination that the profits were excessive in the amount of $850,000.

Reviewed by the Court.

*An order will issue in accordance herewith.*